Slip Op. 11-121

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **SKF USA INC., SKF FRANCE S.A., SKF AEROSPACE FRANCE S.A.S., SKF INDUSTRIE S.P.A., SOMECAT S.P.A., SKF (U.K.) LIMITED, and SKF GMBH,**<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED STATES**,<br><br>Defendant,<br><br>and<br><br>**THE TIMKEN COMPANY**,<br><br>Defendant-Intervenor. | **Before: Timothy C. Stanceu, Judge**<br><br>**Court No. 09-00392** |

## OPINION AND ORDER

[Denying in part plaintiffs' motion for judgment on the agency record and ordering remand for redetermination]

Dated: October 4, 2011

*Herbert C. Shelley*, Steptoe & Johnson LLP, of Washington, DC, argued for plaintiff. With him on the brief were *Alice A. Kipel* and *Laura R. Ardito*.

*L. Misha Preheim*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for defendant. With him on the brief were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, *Patricia M. McCarthy*, Assistant Director. Of counsel on the brief was *Shana Hofstetter*, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, of Washington, DC.

*Geert M. De Prest*, Stewart and Stewart, of Washington, DC, argued for defendant-intervenor. With him on the brief were *Lane S. Hurewitz*, *Terence P. Stewart*, *William A. Fennell*, and *Noman A. Goheer*.

Stanceu, Judge: Plaintiffs SKF USA Inc., SKF France S.A. and SKF Aerospace France

S.A.S. (collectively,"SKF France"), SKF Industrie S.p.A. and Somecat S.p.A. (collectively,"SKF

Italy"), SKF GmbH ("SKF Germany"), and SKF (U.K.) Limited contest the final determination

("Final Results") issued by the International Trade Administration, United States Department of

Commerce ("Commerce" or the "Department"), in the nineteenth administrative reviews of

antidumping orders on imports of ball bearings and parts thereof ("subject merchandise") from

France, Germany, Italy, Japan, and the United Kingdom for the period May 1, 2007 through

April 30, 2008 ("period of review" or "POR").  Compl. ¶¶ 19-35; *Ball Bearings & Parts Thereof*

*From France, Germany, Italy, Japan, & the United Kingdom: Final Results of Antidumping*

*Duty Admin. Reviews & Revocation of an Order in Part*, 74 Fed. Reg. 44,819 (Aug. 31, 2009)

("*Final Results*").  Plaintiffs also challenge the Department's policy, rule, or practice of issuing

liquidation instructions to U.S. Customs and Border Protection ("Customs") fifteen days after the

date on which the Final Results were published ("15-day rule").  Compl. ¶¶ 14-18.

Before the court is plaintiffs' motion for judgment on the agency record, which is made

pursuant to USCIT Rule 56.2 for the challenges to the Final Results and pursuant to USCIT

Rule 56.1 for the challenge to the Department's 15-day rule.  Pls.' Mot. for J. upon the Agency

R. Pursuant to Rules 56.1 & 56.2 ("Pls.' Mot.").  In contesting the Final Results, plaintiffs

challenge several of the Department's methodological choices, as follows: (1) "deducting

constructed export price ('CEP') profit from U.S. sales price for all CEP sales," including, in

particular, sales of bearings exported by SKF (U.K.) Limited's SNFA operations ("SNFA"), *id.*

at 2, (2) using "foreign market freight and packing expenses incurred by entities other than SKF

Industrie S.p.A. to cap home market freight and packing revenues," *id.*, (3) "reallocating the

transport packing expenses of SKF (U.K.) Limited's Stonehouse operations on a weight basis,"

*id.*, and (4) employing the "zeroing" methodology in determining a weighted-average dumping

margin for the plaintiffs, *id.*[1]  Plaintiffs also contend that it was "not in accordance with law" for

Commerce to apply its 15-day rule in this case, requesting that the court order that the 15-day

rule "is unlawful and void."  *Id.* at 2-3.  The court rejects plaintiffs' claims other than those

challenging the Department's use of the zeroing methodology and the 15-day rule.  The court

will order remand for Commerce to reconsider use of the zeroing methodology in these reviews

and award declaratory judgment holding the 15-day rule unlawful as applied to implement the

Final Results.

## I. BACKGROUND

Commerce initiated the subject reviews on July 1, 2008.  *Initiation of Antidumping &*

*Countervailing Duty Admin. Reviews & Requests for Revocation in Part*, 73 Fed. Reg. 37,409

(July 1, 2008).  On April 27, 2009, Commerce published the preliminary results ("Preliminary

Results").  *Ball Bearings & Parts Thereof From France, Germany, Italy, Japan, & the United*

*Kingdom: Prelim. Results of Antidumping Duty Admin. Reviews & Intent To Revoke Order In*

*Part*, 74 Fed. Reg. 19,056 (Apr. 27, 2009).  On August 31, 2009, Commerce published the Final

---

[1] To calculate a weighted-average dumping margin in an administrative review, the
International Trade Administration, United States Department of Commerce ("Commerce") first
determines two values for each entry of subject merchandise falling within the period of review:
the normal value and the export price ("EP") (or the constructed export price ("CEP") if the EP
cannot be determined).  Tariff Act of 1930 ("Tariff Act"), § 751, 19 U.S.C. § 1675(a)(2)(A)(i)
(2006).  Commerce then determines a margin for each entry by taking the amount by which the
normal value exceeds the EP or CEP.  *Id.* §§ 1675(a)(2)(A)(ii), 1677(35)(A).  In determining a
dumping margin according to the zeroing methodology, Commerce assigns a value of zero, not a
negative value, to the entry if normal value is less than EP or CEP.  Finally, Commerce
aggregates these values to calculate a weighted-average dumping margin.  *Id.* § 1677(35)(B).

Results, which assigned dumping margins of 10.13% to SKF France, 3.32% to SKF Germany,

15.10% to SKF Italy, and 18.64% to SKF (U.K.) Limited.  *Final Results*, 74 Fed. Reg. at 44,821.

Plaintiffs filed their summons and complaint on September 15, 2009.  Summons; Compl.

On September 16, 2009, plaintiffs filed a consent motion for preliminary injunction against

liquidation of entries of subject merchandise, which the court granted on September 21, 2009.

SKF's Consent Mot. for a Prelim. Inj. to Enjoin Liquidation of Entries; Order (Sept. 21, 2009),

ECF No. 9.  On November 19, 2009, defendant moved to dismiss plaintiffs' challenge to the

15-day rule for lack of standing, Def.'s Mot. to Dismiss, which motion the court denied on

May 17, 2010, *SKF USA Inc. v. United States*, 34 CIT __, Slip Op. 10-57 (May 17, 2010).

On June 1, 2010, plaintiffs filed the instant motion for judgment on the agency record,

together with a supporting brief.  Pls.' Mot.; Br. in Supp. of SKF's Rules 56.1 & 56.2 Mot. for J.

upon the Agency R. ("Pls.' Br.").  Defendant and defendant-intervenor oppose this motion.[2]

Def.'s Opp'n to Pl.'s Mot. for J. upon the Agency R. ("Def.'s Opp'n"); Resp. Br. of The Timken

Co. to the Rules 56.1 & 56.2 Mot. of SKF USA Inc., et al. ("Def.-intervenor's Resp.").  Oral

argument was held February 10, 2011.  Oral Tr. (Feb. 10, 2011).

## II. DISCUSSION

The court exercises subject matter jurisdiction pursuant to section 201 of the Customs

Courts Act of 1980.  28 U.S.C. § 1581(c) (2006) (for claims challenging the Final Results) &

1581(i) (for the challenge to the 15-day rule).  For plaintiffs' claims contesting the Final Results,

the court will "hold unlawful any determination, finding, or conclusion found . . . to be

---

[2] On October 8, 2009, the court granted the consent motion of The Timken Company to intervene.  Order (Oct. 8, 2009), ECF No. 24.

unsupported by substantial evidence on the record, or otherwise not in accordance with law.  *See*

Tariff Act of 1930 ("Tariff Act"), § 516A, 19 U.S.C. § 1516a(b)(1)(B)(i).  For plaintiffs' claim

challenging the 15-day rule, the court will "hold unlawful and set aside agency action, findings,

and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law."  Administrative Procedure Act, § 706, 5 U.S.C. § 706; 28 U.S.C.

§ 2640(e) (2006); *SKF USA Inc. v. United States*, 33 CIT __, __, 659 F. Supp. 2d 1338, 1342

(2009) ("*SKF IV*").

<u>A.  Commerce Did Not Err in Deducting an Amount for Profit Associated with Sales by SNFA</u>

        SNFA sold to customers in the United States subject merchandise that was produced

either by Somecat S.p.A. in Italy or by SNFA itself.  Pls.' Br. 7.  SNFA and a U.S. selling agent

that SNFA retained performed selling functions in support of these U.S. sales.  *See Mem. from*

*Int'l Trade Compliance Analyst, AD/CVD Enforcement 5 to the File* 4 (Apr. 21, 2009) (Admin.

R. Doc. No. 4875); *Letter from SKF (U.K.) Limited to the Sec'y of Commerce* A-54 (Jan. 5,

2009) (Admin. R. Doc. No. 4569) ("*SKF UK's Questionnaire Resp.*").  The sales contracts were

between SNFA and the ultimate customer.  Pls.' Br. 8-9.  SKF (U.K.) Limited reported these

sales to Commerce using constructed export price ("CEP").  *SKF UK's Questionnaire Resp*. C-3.

As plaintiffs acknowledge, reporting these sales as export price ("EP") sales would have been

inappropriate because the date of sale was not "before the date of importation."[3]  Pls.' Br. 9

---

[3] The statute, 19 U.S.C. § 1677a, defines export price and constructed export price as
(a) Export price
The term "export price" means the price at which the subject merchandise is first
sold (or agreed to be sold) before the date of importation by the producer or exporter
of the subject merchandise outside of the United States to an unaffiliated purchaser
in the United States or to an unaffiliated purchaser for exportation to the United
                                                                    (continued...)

(stating that these sales were "identical in structure to an EP transaction . . . except for the fact

that the invoices are issued after the bearings are imported into the United States.").

　　　　Commerce calculated CEP by deducting from the price paid for the subject merchandise

when sold in the United States (the CEP "starting price") the commissions SNFA paid to the

U.S. selling agent as well as the profit allocated to those commissions ("CEP profit").  Issues &

Decision Mem., A-100-001, ARP 04-08, at 16-17 (Aug. 25, 2009) (Admin. R. Doc. No. 4981)

("*Decision Mem.*").  Plaintiffs claim that the Department's deducting the profit allocated to the

commissions was unlawful.  Citing the Statement of Administrative Action accompanying

passage of the Uruguay Round Agreements Act ("SAA"), plaintiffs argue that deducting CEP

profit is only necessary to reach "a price corresponding to an export price between non-affiliated

exporters and importers" and that CEP profit should not be deducted in this case because SNFA

sold only to unaffiliated importers.  Pls.' Br. 8 (citing *Uruguay Round Agreements Act,*

*Statement of Administrative Action*, H.R. Doc. No. 103-316, Vol. 1, at 823 (1994), *reprinted in*

1994 U.S.C.C.A.N. 4040, 4162-63 ("*SAA*")).  Plaintiffs argue, further, that deducting CEP profit

results in the unlawful double-counting of profit, the profit earned by the U.S. agent already

having been deducted as part of the commission expense.  *Id.* at 9-12.

_____

[3](...continued)
States, as adjusted under subsection (c) of this section.
(b) Constructed export price
The term "constructed export price" means the price at which the subject
merchandise is first sold (or agreed to be sold) in the United States before or after the
date of importation by or for the account of the producer or exporter of such
merchandise or by a seller affiliated with the producer or exporter, to a purchaser not
affiliated with the producer or exporter, as adjusted under subsections (c) and (d) of
this section.

The statute, 19 U.S.C. § 1677a(c)-(d), lists specific adjustments to the CEP starting price that Commerce must make to reach a constructed export price, including a reduction in the starting price by the amount of various expenses "incurred by or for the account of the producer or exporter, or the affiliated seller in the United States . . . ." 19 U.S.C. § 1677a(d).  One such expense, described in paragraph (1) of § 1677a(d), is "commissions for selling the subject merchandise in the United States." *Id.* § 1677a(d)(1)(A).  The statute directs, further, that the starting price "shall also be reduced by . . . the profit allocated to the expenses described in paragraphs (1) and (2)." *Id.* § 1677a(d)(3).

The court concludes that Commerce acted lawfully in deducting the profit for the commissions.  It is undisputed that SNFA incurred selling expenses in the form of commissions for selling subject merchandise in the United States.  The statute requires unambiguously that the starting price "shall" be reduced by an amount for the profit allocated to those expenses.  *Id.*[4]  Plaintiffs' argument that Commerce need not deduct the CEP profit on these facts to reach a price corresponding to an export price between non-affiliated exporters and importers is

---

[4] The relevant part of the statute reads:
[T]he price used to establish constructed export price shall also be reduced by—
(1) the amount of any of the following expenses generally incurred by or for the account of the producer or exporter, or the affiliated seller in the United States, in selling the subject merchandise (or subject merchandise to which value has been added)—
  (A) commissions for selling the subject merchandise in the United States;
  (B) expenses that result from, and bear a direct relationship to, the sale, such as credit expenses, guarantees and warranties;
  (C) any selling expenses that the seller pays on behalf of the purchaser; and
  (D) any selling expenses not deducted under subparagraph (A), (B), or (C);
(2) the cost of any further manufacture or assembly (including additional material and labor), except in circumstances described in subsection (e) of this section; and
(3) the profit allocated to the expenses described in paragraphs (1) and (2).
19 U.S.C. § 1677a(d).

unavailing, for Commerce acted as expressly directed by statute in deducting profit allocated to

the selling activity for which the commission served as compensation.  The SAA does not

provide to the contrary and confirms, instead, that Commerce is to make a CEP profit deduction

for profit associated with selling activities undertaken in the United States.  *See SAA* at 823,

*reprinted in* 1994 U.S.C.C.A.N. at 4163 (the starting price will be reduced by "profit allocable to

the selling . . . expenses incurred in the United States.").  Nor does it matter for purposes of the

statutory profit deduction that, as plaintiffs argue, SNFA sold only to unaffiliated customers: the

salient point is that the selling activities associated with the commissions were undertaken in the

United States on behalf of SNFA.  Also, the court disagrees with plaintiffs' argument that

deducting CEP profit in addition to an agent's commission unlawfully deducts profit twice.  Any

profit realized by the U.S. selling agent, which is incorporated within the commission itself, is

separate from profit realized by the exporter when undertaking the economic activity for which

the commission was paid.

### B.  Commerce Lawfully Determined the Amount of the Adjustment to the Home-Market Purchase Price for Freight and Packing Expenses

In calculating the normal value of subject merchandise, Commerce is required to deduct

from the home-market purchase price of the foreign like product any included "packing" costs,

*i.e.,* any costs, charges, and expenses included in that price that were incurred for "placing the

foreign like product in condition packed ready for shipment to the place of delivery to the

purchaser."  Tariff Act, § 773, 19 U.S.C. § 1677b(a)(6)(B)(i).  The statute also requires

Commerce to deduct included home-market "freight" costs, *i.e.*, any amount included in the

price that is "attributable to any additional costs, charges, and expenses incident to bringing the

foreign like product from the original place of shipment to the place of delivery to the

purchaser." *Id.* § 1677b(a)(6)(B)(ii).

As home-market packing costs, SKF Italy reported expenses for the following three

activities: (1) packing at the factory, (2) packing from a German warehouse owned by another

SKF entity, and (3) packing from a Belgian distribution center owned by another SKF entity.

*Letter from Pls. to the Sec'y of Commerce* B-82-86 (Oct. 21, 2008) (Admin. R. Doc. No. 4833)

("*SKF Italy's Questionnaire Resp.*").  As home-market freight costs, SKF Italy reported

expenses for six separate freight activities: (1) freight from the factory to an Italian warehouse,

(2) freight from the factory to the German warehouse, (3) freight from the factory to the Belgian

distribution center, (4) freight from an Italian warehouse to the ultimate customer, (5) freight

from the German warehouse to an Italian warehouse, and (6) freight from the Belgian

distribution center to an Italian warehouse.  *Id.* at B-26, B-48-56.

In the Final Results, Commerce deducted all of the above-mentioned packing costs from

normal value, but it reduced ("offset") the total packing costs by the total amount of revenue that

SKF Italy realized from home-market packing activities.  *Decision Mem.* 29.  Commerce took

the same approach to the freight-cost deduction, aggregating all home-market freight costs and

offsetting those costs with the total revenue SKF Italy received from home-market freight

activities.  *Id.*  Because the total packing costs and the total freight costs exceeded the revenue

from packing activities and from freight activities, respectively, that SKF Italy received,

Commerce made deductions to the home-market purchase price for packing expenses and freight

expenses.  Oral Tr. 30-33.

Plaintiffs claim that Commerce unlawfully limited the deductions from normal value for packing and freight costs, arguing that Commerce should have imposed individual "offset caps," based on certain specific categories of packing and freight expenses, that would have reduced the offsets Commerce made.  Pls.' Br. 12-16.  Plaintiffs maintain that Commerce "failed to ensure that there was proper correspondence between the revenues and expenses for which an offset was calculated."  *Id.* at 12.  They point out that SKF Italy charged customers for, and thus collected revenue for, only one type of packing activity and, similarly, charged customers for only type of freight activity.  *Id.* at 13; Reply Br. in Supp. of SKF's Rules 56.1 & 56.2 Mot. for J. upon the Agency R. 7 ("Pls.' Reply").  They argue that Commerce should not have offset the other packing expenses, and the other freight expenses, both of which pertained to transfers between sister companies, with the revenues that SKF Italy received from its home-market customers, and that the proper course was for Commerce to use the specific expenses associated with those two classes of revenue as upper limits, or "offset caps," for the specific categories of revenue offsets.  They argue that the different types of freight expenses, although labeled as 'freight,' do not relate to the same type of activity and make the same argument with respect to the different packing expenses.  Pls.' Br. 16.  They also consider applying the revenues as offsets to the aggregated packing and freight expenses to be unreasonable because some of the aggregated expenses were borne not by SKF Italy but by its affiliates.  *Id.*; Pls.' Reply 7 ("It is unreasonable to expand the offset cap beyond the company that actually charged the revenue.").  Plaintiffs also argue that Commerce, in aggregating the packing and freight costs, failed to follow its own stated practice.  Pls.' Br. 13.

The court does not find merit in plaintiffs' claim.  As directed by the statute, Commerce

reduced normal value by all of plaintiffs' reported packing and freight expenses, a fact plaintiffs

do not contest.  Directing their claim to the treatment of revenues received from home-market

customers for packing and freight activities, plaintiffs would have Commerce treat different

categories of packing and freight expenses separately, rather than in the aggregate, for purposes

of revenue offsets.  The statute, however, is silent on how Commerce is to adjust the packing and

freight expense deductions for revenue received.  The court finds nothing in the statute requiring

Commerce to adopt the approach plaintiffs advocate, and plaintiffs cite no statutory or regulatory

provision that the Department's method is claimed to violate.  Nor can the court conclude, as

plaintiffs maintain, that the aggregate approach the Department took to packing and freight costs

was somehow unreasonable.  Plaintiffs benefited from the full reductions to normal value,

regardless of whether SKF Italy or one of its affiliates incurred the expense in question.

For their argument alleging a departure from practice, plaintiffs rely on the Department's

decision in an administrative review of an antidumping duty order on polyethylene retail carrier

bags from China.  *Id.* at 15 (citing *Polyethylene Retail Carrier Bags from the People's Republic*

*of China: Final Results of Antidumping Duty Admin. Review*, 74 Fed. Reg. 6,857 (Feb. 11, 2009)

& Issues & Decision Mem., A-570-886, ARP 7-07, at 12-14 (Feb. 11, 2009), *available at*

http://ia.ita.doc.gov/frn/summary/PRC/E9-2930-1.pdf ("*PRCBs from China Decision Mem.*")).

Plaintiffs point specifically to the Department's statement in the Issues & Decisions

Memorandum from that review that the "offset practice limits the granting of an offset to

situations where a respondent *incurs expenses and realizes revenues* from the same type of

activity."  *Id.* at 16 (citing *PRCBs from China Decision Mem.* 14).  Plaintiffs argue that

Commerce, in this case, departed from this practice by not limiting its revenue offset calculations

to the particular packing and freight expenses that SKF Italy itself incurred.  *Id.*  The court is

unpersuaded by this argument.  Plaintiffs fail to show that the administrative decision in the cited

review involving polyethylene retail carrier bags from China, in which Commerce excluded U.S.

brokerage and handling charges from its offset cap for the inland-freight expense, established a

practice directly addressing the narrow issue presented by this case or that there was a deviation

from any such practice.  *See PRCBs from China Decision Mem.* 14.  In the Decision

Memorandum, Commerce cited a broader practice, stating that "with respect to the inland-freight

revenues and expenses, it is our practice to incorporate 'freight-related revenues as offsets to

movement expenses because they all relate to the movement and transportation of subject

merchandise.'"  *Decision Mem.* 29 (citing *Certain Orange Juice from Brazil: Final Results &*

*Partial Rescission of Antidumping Duty Admin. Review*, 73 Fed. Reg. 46,584 (Aug. 11, 2008) &

Issues & Decision Mem., A-351-840, ARP 2-07, at 22 (Aug. 5, 2008), *available at*

http://ia.ita.doc.gov/frn/summary/BRAZIL/E8-18479-1.pdf).

   C.  Commerce Lawfully Determined Packing Expenses for the Stonehouse Operation

   Both normal value and U.S. price (*i.e.*, export price or constructed export price) include

an amount for packing cost so that they reflect the price of merchandise "in condition packed

ready for shipment to the United States."  19 U.S.C. § 1677a(c)(1)(A) (export price); *Id.*

§ 1677b(a)(6)(A) (normal value).  Because SKF (U.K.) Limited's Stonehouse operation did not

maintain transaction-specific records for its packing expenses, the questionnaire response

reported packing expense for each sale using an allocation methodology.  *SKF UK's*

*Questionnaire Resp.* B-53-54, C-70-71.  Under this methodology, the per-sale packing cost

amount was calculated by multiplying the "gross unit price of the bearing" by a packing expense

rate determined by dividing the total amount of packing expenses for the period of review,

including costs incurred for packing merchandise not within the scope of the antidumping duty

order, by "total net revenue received." *Id.* at B-53-54, C-70-71.  In the Final Results, Commerce

reallocated the packing costs to convert them to a weight basis, as opposed to the value basis

used by SKF (U.K.) Limited, so that packing costs were the product of multiplying the weight of

the bearing sold by a revised packing expense rate. *Mem. from Senior Import Compliance

Specialist to the File* 2 (Aug. 25, 2009) (Admin. R. Doc. No. 4691) ("*Stonehouse Analysis

Mem.*").  This revised packing expense rate was calculated by dividing the sum of the packing

costs for sales of in-scope merchandise, as reported by SKF (U.K.) Limited, by the total weight

of in-scope merchandise sold during the period of review.  *Id.*

Plaintiffs claim that Commerce violated its own regulations by reallocating packing

expenses by weight instead of accepting an allocation method that was not "unreasonably

distortive."[5]  Pls.' Br. 18 (citing 19 C.F.R. § 351.401(g)(1) (2009)).  Plaintiffs also claim that

Commerce failed to follow the regulatory requirement that it "take into account the records

maintained by the party in question in the ordinary course of its business" when deciding

whether to accept a party's allocation methodology. *Id.* at 19 (citing 19 C.F.R. § 351.401(g)(3)).

In support of this claim, plaintiffs cite prior administrative proceedings in which Commerce

accepted packing expenses allocated on the basis of revenue. *Id.* at 18-19 (citing *Final*

---

[5] SKF (U.K.) Limited reported some packing costs, "factory packing materials and
fabrication," as part of the cost of manufacturing. *Letter from SKF (U.K.) Ltd. to the Sec'y of
Commerce*, B-53, C-70 (Jan. 5, 2009) (Admin. R. Doc. No. 4569) ("*SKF UK's Questionnaire
Resp.*").  The claim under consideration pertains only to the cost of packing for transport.

*Determinations of Sales at Less than Fair Value: Antifriction Bearings (Other Than Tapered Roller Bearings) & Parts Thereof From the Federal Republic of Germany*, 54 Fed. Reg. 18,992 (May 3, 1989); *Ball Bearings & Parts Thereof from France, Germany, Italy, & the United Kingdom: Final Results of Antidumping Duty Admin. Reviews*, 71 Fed. Reg. 40,064 (Jul. 14, 2006)).  The court determines that the Department's calculation of packing expenses was in accordance with law because it was based on a permissible conclusion that plaintiffs' value-based allocation caused unreasonable distortions.

Under its regulations, Commerce "may consider allocated expenses and price adjustments when transaction-specific reporting is not feasible, provided the Secretary is satisfied that the allocation method used does not cause inaccuracies or distortions."  19 C.F.R. § 351.401(g)(1).  The regulations further require that "[a]ny party seeking to report an expense . . . on an allocated basis must demonstrate to the Secretary's satisfaction that the allocation is calculated on as specific a basis as is feasible, and must explain why the allocation methodology used does not cause inaccuracies or distortions."  *Id.* § 351.401(g)(2).  Regarding the feasibility of transaction-specific reporting or whether an allocation method is "on as specific a basis as is feasible," *id.*, "the Secretary will take into account the records maintained by the party in question in the ordinary course of its business," *id.* § 351.401(g)(3).  The preamble to the Department's regulations states that the Department "intends to reject only those allocation methods that produce unreasonable inaccuracies or distortions."  *Antidumping Duties; Countervailing Duties*, 62 Fed. Reg. 27,296, 27,346 (May 19, 1997).

Commerce did not err in determining that plaintiffs' value-based allocations of packing expenses were unreasonably distortive.  Commerce found, and plaintiffs do not dispute, that

under plaintiffs' methodology "two different sales of the same bearing, packed in the same

manner, could have different reported packing expenses solely because of differences in price

. . . ." *Decision Mem.* 40 (internal quotation omitted).  The identified situation, in which

identical products were not allocated identical packing costs, occurred in this case because

identical products were sold at different prices.  *Id.*  The Decision Memorandum further found

that "this problem affects a significant proportion of SKF UK's reported home-market and U.S.

sales," citing an internal analysis of this issue.  *Id.* (citing *Stonehouse Analysis Mem.*

attachment C).  Commerce proceeded to conclude that, on the record facts, allocating by weight

was a "better method for allocating packing expenses than price because it avoids the problem

described above." *Id*.  Commerce reasonably determined that allocation based on weight

avoided the distortion that it identified as occurring when value-based allocation was applied.

In their reply, plaintiffs argue that allocating by value was not distortive because "the

percentage difference in the margin resulting from the use of SKF's value-based methodology

. . . was less than 0.4%."  Pls.' Reply 9-10.  This argument is misguided.  Where, as here, there

are no findings of fact in dispute, the court must determine the lawfulness of the Department's

determination according to the statute and regulations.  The specific question presented is

whether the Department acted according to law in deciding to make a change from a value-based

to a weight-based allocation method.  The margin is, of course, determined by multiple

determinations and calculations made during the review.  The percentage effect that the

reallocation at issue had on the margin, as identified by plaintiffs, does not establish that the

Department's resort to this reallocation was impermissible.

Finally, plaintiffs' reliance on prior administrative decisions is unavailing.  The Decision

Memorandum provided a reasoned explanation of why, on the record of this case, a value-based

allocation methodology was distortive.  That Commerce allowed a value-based allocation in

other cases does not establish that Commerce acted contrary to law in this case.

<u>D.  Remand is Appropriate in Response to Plaintiffs' Challenge to the Department's Use of the "Zeroing" Methodology</u>

Plaintiffs argue that the Department's use of the "zeroing" methodology in these reviews

was inconsistent with U.S. antidumping laws and with the international obligations of the United

States.  Pls.' Br. 25-37.  Defendant responds that "[c]ontrolling precedent from the United States

Court of Appeals for the Federal Circuit precludes SKF's challenge to Commerce's zeroing

methodology."  Def.'s Opp'n 26; *see*, *e.g.*, *Koyo Seiko Co. v. United States*, 551 F.3d 1286,

1290-91 (Fed. Cir. 2008).  Defendant-intervenor agrees, arguing that "[t]he Federal Circuit and

this court have affirmed Commerce's methodology as lawful under U.S. law numerous times.

Neither the court nor the parties should be required to devote resources to arguments that have

been rejected repeatedly."  Def.-intervenor's Resp. 1.  Based on recent decisions of the United

States Court of Appeals for the Federal Circuit ("Court of Appeals"), the court determines that

remand is appropriate on the zeroing issue presented by this case.

Although the Court of Appeals previously had upheld the Department's use of zeroing in

administrative reviews, *see, e.g.*, *SKF USA Inc. v. United States*, 630 F.3d 1365, 1375 (Fed. Cir.

2011); *Koyo Seiko Co.*, 551 F.3d at 1290-91, in two more recent cases the Court of Appeals has

held that the final results of administrative reviews in which zeroing was used must be remanded

so that Commerce may explain its interpreting the language of section 771 of the Tariff Act,

19 U.S.C. § 1677(35), inconsistently with respect to the use of zeroing in investigations and the

use of zeroing in administrative reviews. *JTEKT Corp. v. United States*, 642 F.3d 1378, 1383-85

(Fed. Cir. 2011); *Dongbu Steel Co. v. United States*, 635 F.3d 1363, 1371-73 (Fed. Cir. 2011).

Basing its holdings on the lack of a satisfactory explanation for the differing statutory

interpretations, the Court of Appeals in *JTEKT Corp.* and *Dongbu* held that the judgments of the

Court of International Trade affirming the use of zeroing in the administrative reviews at issue in

those cases must be set aside.  In *Dongbu*, the Court of Appeals reasoned that "[a]lthough

19 U.S.C. § 1677(35) is ambiguous with respect to zeroing and Commerce plays an important

role in resolving this gap in the statute, Commerce's discretion is not absolute" and concluded

that "Commerce must provide an explanation for why the statutory language supports its

inconsistent interpretation."  *Dongbu*, 635 F.3d at 1372.  In *JTEKT Corp.*, the Court of Appeals

directed that "[in] order to satisfy the requirement set out in *Dongbu*, Commerce must explain

why these (or other) differences between the two phases [administrative reviews and

investigations] make it reasonable to continue zeroing in one phase, but not the other."  *JTEKT*

*Corp.*, 642 F.3d at 1385.

The court concludes that a remand is appropriate in this case to direct Commerce to

provide the explanation contemplated by the Court of Appeals in *Dongbu* and *JTEKT Corp.*,

both of which decisions questioned the legality of the Department's construction of 19 U.S.C.

§ 1677(35) and declined to affirm the judgment of the Court of International Trade upholding

that construction.  *See JTEKT Corp.*, 642 F.3d at 1383-85; *Dongbu*, 635 F.3d at 1371-73.  The

Decision Memorandum is devoid of any discussion justifying the Department's interpreting the

language of 19 U.S.C. § 1677(35) inconsistently with respect to the use of zeroing in

investigations and the use of zeroing in administrative reviews.  The Department, on remand,

must alter that decision or set forth an explanation of how the language of 19 U.S.C. § 1677(35)

as applied to the zeroing issue permissibly may be construed in one way with respect to

investigations and the opposite way with respect to administrative reviews.

E.  Commerce Failed to Support with Adequate Reasoning its Application of the 15-Day Rule

On August 31, 2009, Commerce stated in the Final Results its intention to issue

liquidation instructions to Customs "15 days after publication of these final results of reviews,"

*Final Results*, 74 Fed. Reg. at 44,821, "unless we are aware that an injunction has been filed or is

imminent," *Decision Mem.* 12.  On September 16, 2009, before Commerce issued liquidation

instructions, plaintiffs filed a consent motion to enjoin liquidation of its entries of subject

merchandise, which motion the court granted on September 21, 2009.  SKF's Consent Mot. for a

Prelim. Inj. to Enjoin Liquidation of Entries; Order (Sept. 21, 2009), ECF No. 9.  No entries

were liquidated.  Def.'s Opp'n 25.

Plaintiffs claim that the Department's applying the 15-day rule was unlawful because the

Department failed to consider all relevant factors, such as the effect on those parties challenging

antidumping determinations, who must file a summons, complaint, and injunction motion in

fifteen days to avoid losing the opportunity for judicial review due to liquidation of the affected

entries.[6]  Pls.' Br. 23-24.  Plaintiffs request that the court find the Department's policy to be

---

[6] Plaintiffs twice before have successfully challenged the Department's policy of issuing liquidation instructions fifteen days after publication of the final results of an administrative review.  Ruling on a challenge to the seventeenth annual administrative review, the court held that Commerce had "failed to consider the factors that the governing statutory provisions make relevant to any Departmental rule or policy on the timing of the issuance of assessment and liquidation instructions to Commerce."  *SKF USA Inc. v. United States*, 33 CIT __, __, 659 F. Supp. 2d 1338, 1352 (2009) ("*SKF IV*").  Ruling on a similar challenge to the eighteenth administrative review, the court applied collateral estoppel in holding that the Department's

(continued...)

unlawful under 5 U.S.C. § 706, either through collateral estoppel or on the merits. *Id.* at 24. The

court concludes on the merits that the Department's explanation for using the 15-day rule is not

satisfactory and will enter declaratory judgment in favor of plaintiffs.

    In the Decision Memorandum, Commerce attempted to justify its resorting to the 15-day

rule by citing the statutory six-month "deemed liquidation" period, stating that Customs needed

sufficient time to liquidate all entries "before the entries are deemed liquidated" to avoid the

"[e]xtreme consequences" of "the government's inability to collect duties calculated."[7] *Decision*

*Mem.* 12. The Department addressed the interests of plaintiffs seeking judicial review in one

sentence: "Furthermore, our current policy is in accordance with the CIT's statement that we

must provide 'some reasonable opportunity in which a plaintiff may seek to obtain the specific

type of injunction described in {19 USC} § 1516a(c)(2).'" *Id.* (quoting *SKF USA Inc. v. United*

*States*, 33 CIT __, __, 611 F. Supp. 2d 1351, 1364 (2009) ("*SKF III*")) (alterations in original).

    The court reviews on the merits the issue presented by plaintiffs' challenge to the 15-day

rule.[8] An agency must articulate a "rational connection between the facts found and the choice

--------

[6](...continued)
15-day rule was unlawful. *SKF USA Inc. v. United States*, 33 CIT __, __, 675 F. Supp. 2d 1264,
1285 (2009) ("*SKF V*").

    [7] The "deemed liquidation" provision, Tariff Act, § 504, 19 U.S.C. § 1504(d), requires
that entries shall be treated as liquidated at the "duty, value, quantity, and amount of duty
asserted by the importer of record" if not liquidated within six months of the date of entry, or, in
this case, the date the final results of the reviews were published.

    [8] Collateral estoppel does not apply because Commerce explained its use of the 15-day
rule differently with respect to these reviews than it did with respect to past reviews. Commerce
now states that "our current policy is in accordance with the CIT's statement that we must
provide 'some reasonable opportunity in which a plaintiff may seek to obtain the specific type of
injunction described in {19 USC} § 1516a(c)(2).'" Issues & Decision Mem., A-100-001, ARP
04-08, at 12 (Aug. 25, 2009) (Admin. R. Doc. No. 4981).

made." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962).  In setting a

policy that would affect the opportunity for judicial review under 19 U.S.C. § 1516a, Commerce

was required to consider the relevant factors, including "the importance of an orderly

administration of the statutory scheme, under which affected parties may exercise freely their

right to seek and obtain meaningful judicial review" without suffering unnecessary costs and

burdens.  *SKF IV*, 33 CIT at __, 659 F. Supp. 2d at 1350-51; *Citizens to Preserve Overton Park,*

*Inc. v. Volpe*, 401 U.S. 402, 416 (1971).  Defendant maintains that the Department's statement

that its 15-day policy provides "some reasonable opportunity" for a plaintiff to seek an

injunction adequately addresses that factor.  Def.'s Opp'n 23-26; *Decision Mem.* 12.  The court

disagrees.  The Department's attempt to address the factor of the effect on litigants seeking

judicial review is not supported by any meaningful analysis.  Commerce offers nothing beyond

an unsupported conclusion that the 15-day rule is reasonable and a recitation of language from a

prior decision of this court.  *Decision Mem.* 12 (citing *SKF III*, 33 CIT at __, 611 F. Supp. 2d

at 1364).  Missing is any reasoned discussion of the Department's weighing of the competing

factors that must inform a decision to allow only fifteen days for the filing of the summons,

complaint, motion for injunction, and, should consent to an injunction not be forthcoming, an

application for a temporary restraining order.  While pointing to the six-month deemed

liquidation period as the reason for the 15-day rule, the Decision Memorandum offers no

explanation of why the Department decided to afford Customs all but fifteen days of that period

in order to accomplish the liquidation of entries.

As relief on the 15-day-rule claim, the court will award plaintiffs a declaratory judgment

that the Department's use of the 15-day rule in these reviews was unlawful.  No other relief is

requested on this claim.  *See* Pls.' Br. 24; Pls.' Mot.

### III. CONCLUSION AND ORDER

The court concludes that plaintiffs are entitled to relief on their challenge to the

Department's use of the zeroing methodology, and the court will order the Department to

reconsider that use on remand.  The court also concludes that plaintiffs are entitled to declaratory

relief on their challenge to the Department's use of the 15-day rule.  The court denies relief on

plaintiffs' remaining three claims.

Upon considering the arguments of the parties and all submissions herein, it is hereby

**ORDERED** that Plaintiffs' Motion for Judgment upon the Agency Record Pursuant to Rules 56.1 & 56.2, challenging *Ball Bearings & Parts Thereof From France, Germany, Italy, Japan, & the United Kingdom: Final Results of Antidumping Duty Admin. Reviews & Revocation of an Order in Part*, 74 Fed. Reg. 44,819 (Aug. 31, 2009) ("Final Results") and certain decisions therein, be, and hereby is GRANTED in part and DENIED in part; it is further

**ORDERED** that the Final Results be, and hereby are, remanded to the International Trade Administration, U.S. Department of Commerce ("Commerce") for reconsideration and redetermination in accordance with this Opinion and Order and all applicable laws; it is further

**ORDERED** that, on remand, Commerce must reconsider its use of the zeroing methodology in these administrative reviews and, in accordance with the holding of the United States Court of Appeals for the Federal Circuit in *Dongbu Steel Co. v. United States*, 635 F.3d 1363 (Fed. Cir. 2011), must alter that decision or explain how the language of 19 U.S.C. § 1677(35) as applied to the zeroing issue permissibly may be construed in one way with respect to investigations and the opposite way with respect to administrative reviews, and shall recalculate any antidumping duty margins affected by the Department's redetermination; it is further

**ORDERED** that Commerce shall file the results of its remand redetermination with the court not later than sixty (60) days from the date of this Opinion and Order, and that plaintiffs and defendant-intervenor shall have thirty (30) days from the date on which Commerce files its remand redetermination to file any comments thereon; and it is further

**Court No. 09-00392**                                                      **Page 22**

     **ORDERED** that defendant shall be allowed fifteen (15) days from the filing of any comments by plaintiffs in which to file any rebuttal to such comments.


 /s/ Timothy C. Stanceu   
Timothy C. Stanceu
Judge

Dated: October 4, 2011
       New York, New York